NICHOLAS GOLDSBOROUGH

v.

JACOB DARST ET AL.

</div>

1.  JOINT TORT-FEASORS—CONTRIBUTION.—In certain cases of torts and trespasses courts will not interfere to equalize burdens, but there are so many exceptions to the rule that it has ceased to be a general one. So, where the alleged fraud or wrong consisted in an attempt to deprive one of a lot of land unjustly, but which did not succeed, the rule of no contribution between wrong-doers, will not apply. It is not like a case of trespass or negligence, the result of which is an injury and the grounds of recovery.

2.  APPORTIONMENT OF PAYMENT—DEATH OF ONE DEFENDANT.— Where two are sued upon a joint account or cause of action, and pending the action one dies, devising his estate to two legatees, who are then made

parties defendant, the proportion which each defendant would have to pay is not changed. The legatees jointly could not be required to pay more than their ancestor would have been subjected to, had he lived.

3. ABUSE OF PROCESS OF THE COURT.—Two of the defendants, before execution was issued, paid one-half the decree, which was the amount they were bound to pay, while the other defendant, having paid only a part of the amount he was bound to pay, procured the sheriff to levy upon the other defendant's property, and upon a sale, procured a party to purchase the property. *Held*, that such an illegal use of the process of the court ought not to be tolerated; that this defendant should be held to have paid his own debt, and should be required to deliver up the certificate of purchase to be canceled, as a cloud upon the title of the other defendants.

APPEAL from the Circuit Court of Peoria county; the Hon. JOHN BURNS, Judge, presiding. Opinion filed November 2, 1881.

This was a bill in equity, filed by appellant against appellees, Feb. 26, 1880, seeking to set aside a certificate of purchase issued by the sheriff of Peoria county, to appellee Casey, upon a sale of a part of lot one, in block 5, in the city of Peoria (described by metes and bounds), as a cloud upon his title. The sale took place Dec. 20, 1879, and was made in pursuance of a levy under and by virtue of a certain decree rendered by the Peoria County Circuit Court, at its May term, A. D. 1876, in favor of Owen A. Thomas against Jacob Darst, appellant, and Rebecca Goldsborough. The decree was against Jacob Darst, the appellant, and Rebecca Goldsborough, as the representatives of one Atkinson Horn, deceased, who was originally sued with Darst, and died during the pendency of the suit, leaving his estate to complainant and Rebecca Goldsborough, his legatees. The court decreed that they should pay the amount of the decree, $2,427.15, out of the personal effects in their hands. Horn and Darst were also decreed to pay the same amount. The decree was against all for the whole amount.

A general execution was ordered against Darst, and special against appellant and Rebecca Goldsborough, requiring the sum to be made out of the personal effects of Horn in their hands. It is claimed by the bill that Darst was in equity bound to pay one-half of the decree, and appellant and Re-

becca Goldsborough the other half. That appellant and the said Rebecca had paid their half prior to the issuing of the execution. That Darst claimed that he was liable to pay only one-third of said decree. That Darst, in order to avoid the payment of more than one-third, colluded with the sheriff to have a levy made on the above described real estate of complainant, and to that end he turned out the real estate of appellant and directed the sheriff to levy on it, and that the sheriff did levy on appellant's lot, and advertised the same for sale.

That previous to such sale appellant urged Darst to pay his half, and the sheriff to make it of the property of Darst.

That Darst procured appellee, Casey, who was his son-in-law and attorney, to bid in the lot for the sum of $563.83, being the balance due on said decree and costs, Darst having paid one-third of the decree before sale. That Casey purchased in the interest of Darst, although he took the certificate in his own name, and was fully notified at and before the sale of all the facts of the case, and warned not to bid on the lot.

In answer, Darst admits the decree, charges joint liability of all the parties to the decree.

Denies that he is liable for one-half or any specified part thereof, but if he is so liable he is liable for one-third and not one-half; claims payment of one-third; admits the purchase of Casey, but denies collusion, and charges that Casey purchased for himself, and does not hold the certificate for Darst's benefit. Charges that the real estate sold grew out of the personal estate of Atkinson Horn, deceased, of which the appellant was sole legatee, by foreclosure under a mortgage held by Horn at the time of his death.

Casey in his answer says he was not advised of the facts in the case of Thomas v. Darst et al. Charges that from the facts set forth in the decree and the case then made out of fraud by Darst and Horn against Thomas, for which the decree was rendered, there could be no contribution between Darst and the representatives of Horn, in law or equity, and that appellant has no standing in a court of equity even as against Darst. That the real estate purchased by him was bought by appellant with money received from the estate of Horn.

Denies that Darst should pay one-half; admits the purchase, but claims that he purchased on his own account, and not for Darst. Denies all unlawful combination.

By leave of the court Darst amended his answer, setting forth that he was responsible pecuniarily, and any amount for which he was liable could be easily made on execution issued against him. And that appellant, if he was liable, had an adequate remedy at law.

The cause was referred to the master to take proof and report conclusions. The master took the evidence, and made his report to the court of the evidence and his conclusions, finding issues in favor of the complainant, to which report exceptions were filed, and upon hearing by the court the appellant's bill was dismissed, and decree was rendered against him for costs.

The recitals in the decree in the case of Owen A. Thomas v. B. L. T. Bourland, Jacob Darst, appellant, and Rebecca Goldsborough, are as follows, viz:

" That Owen A. Thomas, on the 10th day of November, 1866, was the owner of the E. $\frac{1}{2}$ of lot 3 in Phelps and Bourland's subdivision of the W. $\frac{1}{2}$ of N. E. $\frac{1}{4}$ of S. W. $\frac{1}{4}$ of Sec. No. 8, T. No. 8, N. R. 8, E. 4 P. M., in Peoria county, except the one-tenth thereof, and Charles C. Thomas owned the other half of said lot, and lot 12 in block 58, Ballance's Addition to the city of Peoria; and to enable Charles to obtain a loan from one Patterson, Owen conveyed to Charles his interest in lot 3, and to secure said loan Charles then made a trust deed to one Bourland, as trustee, on said lot 12 and the whole of said lot 3; said Charles afterward conveyed the east half of lot back to said Owen except five-eighths of an acre wrongfully withheld, to wit: Nov. 22, 1867, and about Nov. 26, 1869, Charles conveyed his equity of redemption from said trust deed in said lot 12, and in the W. $\frac{1}{2}$ of lot 3, to Atkinson Horn and the defendant, Jacob Darst. Default having been made in the repayment of said loan, Bourland, as trustee under the provisions of said trust deed, exposed said property for sale; first offering lot 12, which was struck off to David McKee, an irresponsible, worthless person, fraud-

ulently procured by Horn in complicity with Darst, to bid off said lot. This lot was struck off to McKee at $3,500, which. if applied on the debt and costs would still leave a balance of $1,150. To satisfy this balance, the trustee then offered lot 3, and sold it to Darst and Horn for $3,900, and on receipt of that amount from them made them a deed to lot 3. But the trustee then finding that McKee was irresponsible, and could not pay the amount of his bid, applied the whole of said $3,900 in satisfaction of said debt, and Darst and Horn thereupon paid the trustee the balance of the debt, and took from him a full release of lot 12 from the lien of said debt and trust deed.

"It also appears that lot 12 and the W $\frac{1}{2}$ of lot 3, should have been sold first, and the proceeds applied in satisfaction of said debt and trust deed, and that they were of value more than sufficient to satisfy the same, and that said acts and doings of Darst and Horn in procuring for their own benefit the exemption of lot 12 from sale, and preventing the proceeds thereof from being first applied in payment of said debt, was grossly in fraud of said Owen A. Thomas and of his rights in the premises, and that said Owen was entitled to recover the value of his interest in the E. $\frac{1}{2}$ of lot 3, to wit: $1,750, interest and costs, amounting to $2,427.15 and costs at the date of said decree.

"It also appears that said Horn died pending said suit, leaving a nuncupative will, which was after his death written out and duly probated, by which said Horn devised to Rebecca Goldsborough the real estate of which he died seized, and to Nicholas Goldsborough the personal property of which he died possessed, and that Wm. M. Dodge had been appointed and qualified as guardian-at-law of said Nicholas, and that there had come to his hands as such guardian of said personal property for the use of said Nicholas about $7,400. And the Court ordered and adjudged in said decree that said Owen A. Thomas should have and recover from said Jacob Darst, Nicholas and Rebecca Goldsborough the sum of $2,427.15 and costs within thirty days, and in default of payment that execution issue therefor, to be levied generally of the goods and chattels, lands and tenements of said Darst, and of the moneys and per-

sonal property of the said Nicholas in the hands of his said guardian, derived from the estate of said Horn under and pursuant to said will, and of the lands and tenements of said Rebecca Goldsborough, or the proceeds thereof which came to her as heir-in-law of said Horn deceased."

For more particular description of decree, see Darst et al. v. Thomas et al. 87 Ill. 222.

Messrs. CRATTY BROS. & ULRICH, and Messrs. PUTERBAUGH & PUTERBAUGH, for appellant; that the rule that a court will not interfere as between *particeps criminis* to an illegal transaction, is not to be applied where the court can find an innocent party, in favor of whom relief can be granted, cited Miller v. Davidson, 3 Gilm. 518; Leggett v. Dubois, 5 Paige Ch. 119; Hubbard v. Goodwin, 3 Leigh, 514.

Where the liability is joint, equal contribution is just: Selz v. Unna, 6 Wall. 336; Merryweather v. Nixon, 8 T. R. 186; Bailey v. Bussing, 28 Conn. 455; Torrey v. Bank of Orleans, 9 Paige Ch. 648.

An execution must follow the judgment: Herman on Executions, § 55; Douglas v. Whiting, 28 Ill. 362.

A court of equity has jurisdiction in cases of fraud: Nelson v. Rockwell, 14 Ill. 375; Lewis v. Lanphere, 79 Ill. 187; Robinson v. Chesseldine, 4 Scam. 332; Bennett v. McFadden, 61 Ill. 334; Christie v. Hall, 46 Ill. 117; Jarvis v. White, 7 Ves. 415; Petit v. Shepherd, 6 Paige, Ch. 493; Groves v. Webber, 72 Ill. 606.

The evidence fully establishes fraud and collusion on the part of Darst and Casey: Doyle v. Teas, 4 Scam. 202; Cox v. Milner, 23 Ill. 476; Hankinsen v. Barbner, 29 Ill. 80; Wade on Notice, § 7; Blatchley v. Osborn, 33 Conn. 226; Nute v. Nute, 41 N. H. 60; Warren v. Scott, 31, N. H. 332.

Mr. N. E. WORTHINGTON, for appellees; that there can be no contribution between wrong-doers, cited Coventry v. Barbour, 17 Johns. 142; Bailey v. Bussing, 28 Conn. 457; Story on Partnership, § 220; Achison v. Miller, 2 Ohio St. 203; Arnold v. Clifford, 2 Sumn. 238; Armstrong v. Toler, 11 Wheat, 258; Nelson v. Cook, 17 Ill. 443; 1 Story's Eq. Jur.

§ 298; Craft v. McConoughy, 79 Ill. 346; Miller v. Marckle, 21 Ill. 152; Dunaway v. Robertson, 95 Ill. 424; Bolt v. Rogers, 3 Paige, 154.

Equity will not interfere to set aside a sale under execution when a motion to quash the execution or set aside the sale was not made in the court ordering the execution: Beaird v. Foreman, Breese, 385; Farrell v. McKee, 36 Ill. 226; Palmer v. Gardiner, 77 Ill. 143; Hernandez v. Drake, 81 Ill. 34.

Equity powers ought not to be invoked if the law affords sufficient remedy: Victor Scale Co. v. Shurtleff, 81 Ill. 313; Ballance v. Loomis, 22 Ill. 84.

An execution improperly issued may be quashed on motion: Sandburg v. Papineau, 81 Ill. 446.

When property has been levied upon without authority, there is an ample remedy at law: McDaniel v. Fox, 77 Ill. 343.

LACEY, J. It is contended by counsel for appellees, that Darst, under the circumstances, would not be bound in case appellant paid the whole of the said decree, to repay appellant any portion of it, for the reason that it was on account of the fraud of Darst and Horn that the decree was rendered against them, and therefore in such case there could be no contribution.

It is contended that Darst and Horn, the man under whom appellant claims title to the lot in controversy, were "*tort feasors,*" and that between such persons there can be no contribution compelled either in a court of law or equity. In certain cases of torts and trespasses, it is certain that courts will not interfere to equalize burthens, but there are so many exceptions to the rule that it has ceased to be a general one. Bailey v. Bussing, 28 Conn. 455.

In this case it appears that the fraud consisted in procuring the proceeds of the sale of the east half of lot three, as set forth, belonging to Owen Thomas, less one-tenth, amounting to $1,755, which was purchased at the trustee's sale, to be applied on the mortgage debt, under which the sale was made, instead of being paid to Thomas, the owner. Lot No. 12, and

the west half of lot 3, the equity of redemption of which belonged to Darst and Horn, should have first been sold and applied in discharge of the mortgage, and they were of ample value to have paid it off. After applying the proceeds of Thomas' lot to the discharge of the mortgage debt, Darst and Horn paid off the balance of the trust deed, and became the owners of lot 12, and west ½ lot 3, as well by their purchase of the east ½ lot 3. They had acquired title to property amply sufficient to pay off the mortgage, as well as to pay Thomas the value of his lot, which they had bid in at the sale; but by their wrongful acts Thomas had not received anything. The court, by its decree, compelled them to pay Thomas for his lot, and refused to allow them to apply the purchase price of it as they desired, to the discharge of the trust deed. The basis of the decree was the exact price of the lot and interest which the court held, equitably they should pay him. The wrong consisted in an attempt to get Thomas' lot unjustly, which did not succeed. It is not like a case of trespass or assault or negligence, the result of which is an injury, and the grounds of recovery. We think the fraud practiced by Darst and Horn in acquiring this lot, is not of such a character that courts would refuse either to partition the lot between the parties in case application were made for that purpose, or to compel contribution in case one of the purchasers paid the whole price. If Darst and Horn each have one-half the lot acquired from Thomas' equity requires that each should pay one-half the price of it. The fraud was collateral to the consideration for which the decree was rendered, that being for the price of the Thomas lot.

We do not think that the conduct of Darst and Horn in acquiring this lot, considered, presents a case in which a court would refuse to compel contribution of the purchase money.

It is claimed by Darst that he was liable in equity, between himself, appellant and Rebecca Goldsborough, to pay only one-third of the decree. This much he acknowledged by paying it. He bases his claim upon the fact that there were three respondents to the decree which was against all jointly. Therefore each should pay an equal share as be-

tween themselves.   We can see no force in this argument.

Horn and Darst were the original parties in the suit of Thomas.   They had purchased, on joint account, a lot belonging to him, for which they were held liable to pay the latter, but Horn died during the pendency of the suit, and having devised his estate to appellant and Rebecca Goldsborough, they became parties to the decree and responsible to pay the amount that Horn should have paid—one-half.   By his death the estate did not become liable to pay more than he was in life.   Clearly, then, Darst, as between himself, appellant and Rebecca Goldsborough, was bound to pay one-half.   The evidence shows that prior to the issuing of the execution on which the sale in question took place, the appellant and Rebecca Goldsborough had paid one-half of the decree and costs. After the execution was in the hands of the sheriff and before the sale, Darst paid one-third of the decree and costs, thus recognizing the debt as one in which he ought to . make contribution, only disputing the proportion that he should pay.

After the sheriff received the execution he demanded the payment from Darst, who refused to pay the remaining onesixth, claiming that appellant should pay it.   He then procured the sheriff to levy on the lot of appellant, who would not have done so except for the interference and promises of Darst.

The latter promised to furnish a bidder when the sale took place.   Appellee Casey bid in the lot at the sale for the balance due on the decree and costs.

It becomes necessary to inquire whether Casey purchased in the interest and as the agent of Darst, it being claimed on the part of appellant that Casey was the mere agent of Darst, and by appellees that Casey purchased in his own interest. We do not deem it necessary to go into a general examination of all the facts, but we are satisfied, from the evidence, that Casey's purchase was in the interest of Darst, or at least he purchased at the sale for the purpose of assisting Darst to compel appellant to pay two-thirds of the decree, and releasing the former from paying more than one-third.

It appears that Darst furnished the money to Casey to make

the purchase, who was his son-in-law, constant adviser in legal matters, and knew of the wrongful and illegal purpose of his father-in-law, in trying to compel appellant to pay an unjust proportion of the debt. He knew this by notice given by counsel for appellant, before the sale as well as from his own knowledge derived from his conversations with Darst, and his general familiarity with his business. · It is true that appellees both claim that the money advanced by Darst was as a loan, but from all the facts and circumstances of the case as well as the account which they both gave of the transaction, we are compelled to the conclusion that Casey was acting in the interest of Darst, and not for himself.

·· The entire transaction bears the impress of collusion between the appellees to carry out the scheme of Darst to make wrongful use of the process of the court to sell appellant's property to pay a debt, which in equity and good conscience the ·former alone should pay.

The money furnished by Darst and applied by Casey, his agent, to the purchase of appellant's lot, was paid over to the sheriff, who satisfied the decree of Thomas in full.

Thomas has no further interest in the matter; he has been paid.· Darst has only paid what he ought to have paid, and instead of being allowed to hold the certificate of purchase as a cloud upon the title, he should be held to have paid his own debt and be compelled to surrender the certificate. ·He ought not to be allowed to avail himself of the fraud by which he brought about the sale.

Such an illegal use made of the process of the court ought not to be tolerated. If there could be no contribution enforced against Darst, as Casey claims in his answer, though Darst does not, the success of such a fraud as this would be more galling and vexatious because there would be no remedy. Had the sheriff been left free to act without the interference of Darst, he would have collected the balance of the execution of the latter. Should he by his wrongful intermeddling gain such an advantage as this?

It is true, as appears from the evidence, that the lot of appellant which was sold, came to him by virtue of a foreclosure

of a mortgage or trust deed which he received as the legatee of Horn.  The decree only authorized execution against the personal property of Horn in the hands of appellant, and not against his real estate.  At law the levy on the appellant's real estate would be in excess of the decree and void.  It is true that Thomas might follow, by proceedings in equity, the personal estate invested in the lot, and obtain satisfaction of the decree out of the lot, but he has not attempted this, and Darst by bidding at the sale has paid the money to Thomas.  If the former should now claim that the sale should not be set aside on the ground of being void at law except on equitable terms to be enforced against appellant, such as the payment of the bid, we must hold that he has no such claim to the equitable interference of the court, because the debt was his own, and he shou d have paid ·

We are of the opinion, therefore, that the exceptions to the master's report should have been overruled, and a decree making the injunction perpetual, and removing the certificate as a cloud upon appellant's title, and declaring the bid of Casey and payment of the money, as a full satisfaction of the decree, and generally the relief as prayed for in the bill.  For the error of the court in dismissing the bill and not granting such relief, the decree is reversed and the cause is remanded, with directions to overrule exceptions to the master's report, and render decree thereon.      .

Reversed and remanded.